23-900 Thompson v. City of New York Good morning, Your Honors, and may it please the Court. Greg Tsui, on behalf of Appellant Larry Thompson, and with the Court's permission, I'd like to reserve two minutes for rebuttal. Thank you. Every reasonable officer knows that people cannot be prosecuted for exercising their Fourth Amendment rights. But in this appeal, Defendant Clark asks this Court to treat the bare exercise of Fourth Amendment rights as a crime in order to immunize himself from a textbook claim of malicious prosecution. That extreme argument should be rejected for three reasons. First, this is a textbook case of malicious prosecution. This Court has long held that it is unlawful to lie in order to bring false criminal charges. That's exactly- But the lie is to the side. There is no doubt that the defendant lied. But didn't your client admit that he stood in the door and blocked the way in when the policeman wanted to go in? No, Your Honor. He did stand in the door, but he did not block the police officers. He actually opened his door and spoke with them, asked them about the issue they were concerned about. And when they refused to provide more information, he simply said, I will not agree to let you enter without a warrant. That's right. He wouldn't let them enter. Now, he wouldn't let them enter because they didn't have a warrant. But they plausibly had exigent circumstances, didn't they? We dispute that, Your Honor. I mean, there was this crazy thing that said, but that could be exigent circumstances, couldn't it? It could be, Your Honor. That's an issue of fact. It's a disputed issue of fact. And so But couldn't he have said, you can't come in, and if you come in, I will sue you, because you didn't have exigent circumstances. And in that way, I am protecting my Fourth Amendment rights, rather than doing what the police could, what somebody could say was obstructing entrance. I don't think any reasonable jury could say that if the facts are taken in the light most favorable to us, which they must be at this stage, that what he was doing was obstructing, which is to say physically interfering with ongoing police activity, as opposed to invoking his Fourth Amendment rights. And it cannot be the case that merely invoking your Fourth Amendment rights, merely asserting, I will not consent to your entry without a warrant, constitutes a crime. And that's what they need you to believe. Yeah, I mean, if we can read what he did as saying, I won't consent to your entering, because I have Fourth Amendment rights. And then they went in. Okay. But is that what was going on? Or is what he did sufficient that one can say, he kept them from going in? Now, does that involve a mens rea of obstructing an action? That's a harder question. So I agree, Your Honor, whether or not there was unlawful intent is a separate and independent reason they didn't have probable cause. But to your first point about physical interference, about how to construe what he did, I heard you say that you could construe the facts in a way that all he did was assert his Fourth Amendment rights. I'm just asking you about whether the facts are that way. I had read him as saying, you can't come in and I'm staying here. You're saying he didn't do that? Well, I would point this, Honor, again, to his testimony at JA 281. Because again, the question is, did we present evidence that a reasonable jury could credit? And if so, this needs to go to a jury for fact finding. His testimony at JA 281 was that all he did was tell the police, I'm not agreeing to it without a warrant. He didn't say, I'm not agreeing to it under any circumstances. I am blocking you from entering my home, even though I know what you're doing is lawful police activity. He simply invoked the warrant requirement. And that is not a crime. They would need that to necessarily create probable cause in order to prevent this claim from going to a jury again. And that just can't be right. That's actually their only defense, Your Honor, to what you mentioned at the beginning, to the lie, which you said correctly, is undeniable. It's black and white at JA 261 and 262. On page 262, Clark himself testifies that the sole basis for the charge was his assertion that he warned Mr. Thompson about arrest. And at JA 261, so the page before that, he also testifies under oath that the police never gave those warnings. So the entire basis for the charge was a lie. That's textbook malicious prosecution. And his only answer to it is to try to say that it was necessarily a crime for Mr. Thompson to open his door to the police, have a 30 second conversation with them, in which he said, I'm not agreeing to let you enter without a warrant. That's not probable cause. And that can't immunize Officer Clark from malicious prosecution. Could you address qualified immunity? We can still reach that, even if it's forfeited. And so if it's arguable, I understand you just made an argument why you don't think it is probable cause. But if it's arguable, isn't that enough? Two responses, Your Honor. So first of all, it's not arguable, and I'm happy to explain why. But you don't actually even need to get to that step. Because what this court has said in cases like Boyd, in cases like Coggins, is that reasonable officers know not to make up the basis for criminal charges. And because the evidence shows that that's exactly what happened here, the shield of qualified immunity is lost. It doesn't make up other charges, even though they're not directly on this? Even though they're not directly? I mean, he lied about resisting arrest. He lied about other things. Does that mean that he loses qualified immunity as to whether he thought he was being blocked? He does, Your Honor. Because again, what we already talked about was that there was no probable cause. Because all Mr. Thompson did was invoke his Fourth Amendment rights. The right not to be prosecuted without probable cause has been clearly established. Oh, so you're saying there isn't qualified immunity because anybody in that situation would have known that he was doing, that he was not blocking the door? Yes, that's true, Your Honor. And also that, to your question, Your Honor, that the law was clearly established, that simply invoking your Fourth Amendment rights is not a crime. And that was established going back to the 1950s. And I would point this court to People v. Medeiros, which is a New York Appellate Division case that specifically addressed the situation where a homeowner inside his own home refuses to consent to a warrantless search on constitutional grounds. The Appellate Division made clear that is not obstruction. And that's the question here. Would a reasonable officer You are not arguing that he forfeited qualified immunity when he didn't bring it before when he thought that he had won under Connecticut law. I mean, under federal Second Circuit law. I'm sorry about what was required for malicious prosecution, which was Supreme Court reversed us on. So you're not saying that he lost it because he didn't claim it then? Or are you saying that as well? We do say that, Your Honor, we think it's equally easy for this court to resolve qualified immunity on the merits because of how black and white this is. But we do think that you could alternatively reject qualified immunity because as the district court recognized, he failed to make this argument at the close of trial. And that's what Rule 50 requires. But he failed to make that argument because he had won under Second Circuit law. And it was only after the Supreme Court reversed him that he had lost. That's actually not quite right, Your Honor, because what Rule 50 says is that if you're going to seek judgment as a matter of law when the case has proceeded to trial, you need to bring all the arguments you want to rely on. Yeah, I'm hearing you saying that he should have made it then anyway. Exactly, Your Honor. And that's what Rule 50 requires. It allows him to make the choice to put all of his eggs in that favorable termination basket. But if he does, Rule 50 says he's stuck with that. And if he wants to have alternative bases for affirmance, he needs to bring them in compliance with Rule 50. And he clearly failed to do that. That's what the district court recognized. Counsel, let me ask you a question, sort of. If we were to find a lack of probable cause but qualified immunity on that theory on the obstruction of government OGA charge, we then still have the false arrest charge. So what would we do with that? If we ended up in that situation, right, there are a lot of paths that could happen here. But if that tree happened to be one of them, what do we do with that? Can we send it back on that? Because the resisting arrest charge is a different ball of wax in terms of probable cause, I think, in terms of qualified immunity. It very much is, Your Honor. And the district court specifically denied a finding that any reasonable jury would find probable cause for that charge. And so I think, Your Honor, if you decided to apply qualified immunity to this charge, you could send it back because the district court's decision below on the resisting arrest charge hinged on the assumption that there was probable cause. Right. Rather than hinging on, because the district court gives us an alternative ruling on qualified immunity, so it never gives us a substantive ruling on the resisting arrest charge that's not anchored to the OGA charge. Exactly right. Only on the assumption that there was probable cause, which I hear you as saying if you were to not reach probable cause but go straight to qualified immunity. So that assumption wouldn't hold. Thank you. Thank you, Counselor. Thank you, Your Honor. Good morning, Your Honors. May it please the court, I'm Melanie West for the appellate officer at Clark. Could you speak right into the microphone? Is that better, Your Honor? Much better, thank you. The jury's verdict on Thompson's overlapping claims leaves no path for his malicious prosecution claim to succeed. But there are three paths to its failure. First, as the district court found, the jury found there were exigent circumstances justifying the officer's entry. Wait, did the jury find that or did the jury find that a plaintiff failed to establish by the preponderance of the evidence that the entry was unlawful? Those aren't a perfect overlap, are they? You're right, Your Honor. The burden was on the plaintiff. But the burden is also on the plaintiff to show a lack of probable cause in a malicious prosecution claim. And so to the extent that we can find that the jury's finding means anything on unlawful entry, it's the same standard for the malicious prosecution claim, which is that, well, it's not limited to entry. No, entry is one piece. Because the jury found the plaintiff didn't prevail on an unlawful entry claim specifically, the idea that that somehow renders there automatically probable cause for the OGA charge, I'm having a little trouble with that. I agree with you that it's just one piece, but that's the piece on the OGA charge of whether the officers were engaged in unlawful activity. And then the other piece, of course, is whether there was... So the plaintiff has to prove that there were no exigent circumstances, that's your position, to avoid being arrested on the OGA charge, the plaintiff has the burden of proving in this malprossed claim... That there's a lack of probable cause. I mean, that's what Key and other cases of this court hold, that on a malicious prosecution claim it's... Right, but does he then have to show there's a lack of exigent circumstances? The plaintiff... It sounds like you're saying the plaintiff has to prove in his civil action that there was a lack of exigent circumstances. Right, well... As opposed to the defendant using that as a defense to his claim that there was no probable cause. But because it's a malicious prosecution claim, we look at the specific charge, and in this case, we'll start by looking at OGA. And so for the plaintiff to show a lack of probable cause, the elements of OGA are number two, physical interference. I think it would be difficult to imagine how the plaintiff can show a lack of lawful activity where a jury has found that the plaintiff couldn't show a lack of exigent circumstances, because... And if you look at the jury instructions... Sorry, Your Honor. The other side says he didn't block the way in, and if he didn't block the way in, I'm not saying that's so. The other side says he didn't block the way in, and if he didn't block the way in, then why was there an OAG? Your Honor, I don't... I would direct the court to the testimony. The district court found that it was essentially undisputed that Thompson said, acknowledged that he stood in the doorway and blocked it with his body. I think that is what the testimony shows, and I think that that is sufficient for physical interference. What if he spoke through the door? So one of his options would have been to listen and say, hi, this is Larry Thompson. You're telling me you're police. Do you have a warrant? And when they said no, he could say that I declined to open my door. He's not going to barricade the door. He's not taking any affirmative action. He's simply saying I declined to open it. Would they... What's the difference there? As opposed to he's taken... By opening the door, standing and speaking to them face to face. Yes. But we're sort of saying, but by opening the door, you've imposed a duty on yourself to then open it and then stand out of the way, which implicitly invites them in, in spite of your objection. I don't think that's necessarily the case. I think that we have directly on point law, like Shaheed, for example, where someone opened the door and didn't allow the officer in, and it was found to be physical interference. But it's not clear to me that not opening the door wouldn't be physical interference either. It's just that I'm not aware of precisely on point law. Did he have any option here? That's what I'm trying to get at. Does Mr. Thompson have any choices here in this situation? You're saying if he didn't open the door, that might have been physical interference. He did open the door and stood in it. He didn't come out and close the door behind him, daring the cops to open it themselves. I don't know what his options were if he felt... I don't think it's disputed that nobody said to him, we believe we have what's known in the law as extrajudicial circumstances, and so we are required to enter your home to investigate. If you don't move, we will consider that a physical... Nobody warned him. So I'm trying to figure out what he could have done. Well, a couple of things, Your Honor. Number one, I think that the question here is about what a reasonable police officer could believe. No, no, because first, what a reasonable police officer could have asked, that's a qualified immunity question, that's another issue. It's built into the... Wait, but my question is, could he have said to them, you have no right to enter. I can't stop you, but if you enter, I will sue you. I mean, I'm answering, Judge, this question, what could he have done? Is that what you're saying he should have done, or should he only have done that if a police said, we have a right to enter, and he says, I don't think so. I mean, that's where we're hanging. I mean, do you require somebody who doesn't want somebody to enter into his castle, her castle, to say, if you do, I'll sue you, but in the meantime, I have to open the door and get out of the way. Yes, I mean, I certainly think he could have done that, and you know, once the... Then he is OIG. I think the cases that say, you know, the Fourth Amendment right to insist on a warrant, say merely passively insisting on a warrant is not... I mean, there's actus reus to talk stupidly Latin, but is there mens rea on his part when he does that? That is, he is keeping them from coming in, so yes, and they did, but is that sufficient to be mens rea for OIG? I think the police officers told him they needed to investigate allegations of child abuse, and that's sufficient for the mens rea that he interfered with their attempt to conduct a lawful investigation. I thought he thought, his understanding was there had been, but paramedics who came before, and his understanding was, oh, that must be somewhere else. That's right. I guess going to Judge Calabresi's question, it seems to be, it would be a different thing if, in fact, there was child abuse happening in the back, and he was blocking the doorway, and him thinking, oh, it must be happening somewhere else, and you don't have a warrant to come in here. Right, but that was in fact a mistaken belief. It was from his own apartment, as the police officers knew when they were attempting to enter. What they didn't know, of course, what they were trying to investigate was whether or not the allegation was true, and the fact that it turned out not to be true doesn't mean that their investigation wasn't legitimate, or their attempt to enter wasn't legitimate, and in fact, the jury found that it was, or at a minimum, that Thompson couldn't show that it wasn't, and so the jury, by the way, also rejected the false arrest claim, and so that, I mean, I can see my time is already running short, but by rejecting the false arrest claim, I'm not going to necessarily satisfy the physical interference element, either OGA itself, or obstructing medical emergency services, which is subsumed within the definition of OGA. Maybe you can turn in your remaining time to the qualified immunity. Certainly, Your Honor. First, why isn't it waived, and second, if you could address your friend's argument that this was waived. So, yes, Your Honor, it's not waived. The fact that the claim was reinstated means that we're in a pretrial posture, so the rule, what was argued in the Rule 50 motion, is not controlling here, and Your Honor is correct that the district court, you know, say that again, the fact that it's reinstated. We're now in a, what plaintiff is asking for is for this malicious prosecution claim to go to trial, so we're in a pretrial posture on this claim. The point was, though, that you didn't argue qualified immunity at summary judgment previously. That's right, Your Honor, but we, there is no law that says that it has to be preserved in a prior summary judgment motion. We did preserve it in our answer, and that's sufficient. There's nothing that anyone has cited that says it had to be preserved in a first summary judgment motion, and this summary judgment motion is on a different record. It's on the- Are you saying we can decide it, or are you saying that if we send it back, it is at the preliminary stage, and then it might be able to be raised, and it's up to a district court to decide what it is and if it's appropriate to do it? When you say we're at a preliminary stage, you're never at a preliminary stage at this court. No, of course, a pretrial posture on this claim, but the court can decide it, certainly, even if it were, you know, waived to the extent it's a pure issue of law. The court can reach it anyway, and so to address the merits of the reasonable to believe that probable cause existed, could reasonable officers disagree? What we have here is undisputedly a report from within the apartment of an ongoing child abuse. Officers, the jury has found that the officers, or that Thompson could not show that the officers could not enter. Well, Officer Clark lied about resisting arrest. Your Honor, I'm not sure why that's being taken to be true. The jury rejected a fabrication of evidence claim that instructed them on these two things. Number one, whether or not Clark warned Thompson that he could be arrested, and number two, whether or not Thompson resisted arrest. Those were the two things that the jury was instructed on, and that claim was rejected by the jury. So again, I'm not sure why anyone says it's undisputed that Officer Clark lied. We certainly reject that contention, and so what we have is a finding that the officers could enter, a finding that they, a rejection of the false arrest claim, and so really the only question is, what happened after the arrest to dissipate probable cause? What my friend says is that because ultimately it turned out that the child was not abused, that dissipated probable cause. But the child abuse wasn't part of the charge. The charge was interfering in the officer's attempt to enter and investigate this undisputedly, an allegation that came from within the apartment. Thompson in fact did do that, and he did intend to do that, and so at a minimum, there's no law that says, there's no case that says that in these circumstances, there was not probable cause. If the court has no questions, we ask that the court affirm. Now they deny that your client admitted locking the door. They say he did, and you say he didn't. So could you address that? Absolutely, your honor. Mr. Thompson consistently testified at trial that he did nothing to block the door. He didn't touch anyone. He didn't raise his voice. He didn't threaten anyone. All he did was open his door, as Judge Miriam said, open his door to speak with the police. He asked them what the issue was. He explained that the EMTs had already checked his apartment, and the problem wasn't coming from his apartment, and when they refused to provide more information, he asked to see a warrant. The district court said that Mr. Thompson blocked the police only in the sense that his body was physically in the doorframe, and that's why Judge Miriam's question was exactly right about leaving the door closed, because it is only in the sense that his physical being, his standing there, was in their path, and that's not enough for obstruction under New York law. The obstruction cases that don't involve actual physical force against an officer. So again, cases that are at the outer reaches of obstruction, they involve a physical act of intruding yourself into known and identified police activity. So that's like the Devon case, a case where the were conducting a sting operation in a particular area, and he still inserted himself into that area. Mr. Thompson didn't do that. He was in his home. He was in a place he has every right to be, in his castle, as you said, Judge Calabresi, and all he did was open his door and ask to see a warrant. It can't be right that that necessarily created probable cause to prosecute him, but that's what I heard my friend say. Now I want to make three points. First of all, on the verdict, as the court said, the jury was not asked to resolve the specific factual issues that they posit cannot be treated as disputed. We've met our burden at summary judgment to provide evidence to show that there weren't exigent circumstances, that Officer Clark lied, and that there wasn't probable cause at the door. They have a burden to take that away from the jury only by demonstrating that the prior jury actually and necessarily decided those issues, and they can't do that because they never asked the jury to decide, so they can't take that away from the jury now, and that's especially true with the fabrication of evidence claim. I have the verdict sheet here. I think they keep calling it the fabrication of evidence claim to try to make it seem like that's what the jury was asked to decide, but this is the question the jury was asked. Did you find that Clark denied plaintiffs right to a fair trial? An entirely different claim, and not at all a question about whether or not Clark was truthful or not. We've provided evidence that he wasn't, and that means the jury needs to resolve this issue. I see that my time is up, but if I could, I would just make one concluding point. Briefly, go ahead. Thank you, Your Honor. I appreciate it. They said that they raised qualified immunity in their answer, and that's all they needed to do, and that's exactly what this court in McArdle said was not sufficient. In McArdle, the defendant raised qualified immunity in their answer as an affirmative defense, but they failed to raise that summary judgment, and they failed to raise that trial in compliance with Rule 50. And what McArdle said was that they waived the issue because they could not seek judgment as a matter of law based on the trial record without complying with Rule 50. So that's why it's another easy basis for this court to deny qualified immunity. We ask the court to reverse and remand for trial. Thank you, counsel. Thank you both. We'll take the case under advisement.